IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AIR MEASUREMENT TECHNOLOGIES, INC., | § | |
| NORTH-SOUTH CORPORATION, | § | |
| AND LOUIS HERBERT STUMBERG, JR. | § | |
| | § | |
| *Plaintiffs,* | § | NO. SA-03-CA-0541-RF |
| | § | |
| v. | § | |
| | § | |
| AKIN GUMP STRAUSS HAUER & | § | |
| FELD, L.L.P. | § | |
| | § | |
| *Defendants.* | § | |

## JURY INSTRUCTIONS

MEMBERS OF THE JURY:

## GENERAL INSTRUCTIONS

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

1

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory, and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence- such as testimony of an eyewitness. The other is indirect or circumstantial evidence- the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of the other jurors. Notes are not entitled to any

greater weight than the recollection or impression of each juror about the testimony.

## BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means the evidence must persuade you that the claim or defense is more probable than not.

You should base your decision on all the evidence, regardless of which party presented it. Unless otherwise instructed, all of your answers should be based on a preponderance of evidence standard.

## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence has persuaded you that the claim or defense is highly probable. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.

Again, you should base your decision on all the evidence, regardless of which party presented it. This burden is not the "beyond a reasonable doubt" requirement used in criminal cases, but it is an intermediate burden higher than the preponderance burden.

## LEGAL MALPRACTICE

Legal malpractice consists of a failure by an attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in performance of tasks which they undertake, and when such failure proximately causes damage it gives rise to an action in tort. The elements of a malpractice claim are (1) an attorney owed plaintiff a duty stemming from the attorney-client relationship, (2) the attorney breached that duty, (3) the breach proximately caused plaintiff's injuries, and (4) collectable damages.

Because the Plaintiffs must establish that the underlying suit would have been won "but for" the attorney's breach of duty, this "suit within a suit" requirement is necessarily a component of the Plaintiffs burden on cause in fact. Because the underlying suits here were patent infringement actions against the infringement defendants, you will have to decide, hypothetically, the merits of Plaintiffs' infringement claims. Because proof of patent infringement is necessary to show Plaintiffs would have prevailed in the patent infringement litigation, patent infringement and damages are necessary elements of Plaintiffs malpractice claim.

Plaintiffs allege that Akin Gump committed malpractice by acting negligently as the attorneys for Plaintiffs and that these negligent acts caused injury to Plaintiffs. Akin Gump denies these claims and asserts that it acted with ordinary care and that any injury to Plaintiffs was not caused by any acts or omissions of Akin Gump. Akin Gump alleges that, to the extent that Plaintiffs can show that they have sustained any damages, that the negligence, if any, of Plaintiffs including the Replacement Lawyers (Perry & Kellogg, P.C., Conley Rose, LLP, Susman & Godfrey, LLP), Branscomb, and/or Hamilton during

the time between January 1991 and April 30, 1995, Hamilton & Terrile, rather than any negligent acts of Akin Gump, proximately caused any injury claimed by Plaintiffs. Akin Gump also alleges that, to establish they would have lost the underlying infringement cases because of Akin Gump's alleged conduct, Plaintiffs must prove by clear and convincing evidence that Akin Gump committed inequitable conduct (as defined in these instructions); Akin Gump contends Plaintiffs cannot meet this burden.

## NEGLIGENCE

"Negligence," when used with respect to the conduct of attorneys, means failure by an attorney to use ordinary care, that is, failing to do that which an attorney licensed before the United States Patent and Trademark Office (PTO) would have done under the same or similar circumstances or doing that which an attorney licensed before the PTO would not have done under the same or similar circumstances.

"Negligence," when used with respect to the conduct of lawyers who are not patent lawyers at Akin Gump, Branscomb, Hamilton, and Hamilton & Terrile or the Replacement Lawyers means failure to use ordinary care, that is, failing to do that which an attorney of ordinary prudence would have done under the same or similar circumstances or doing that which an attorney of ordinary prudence would not have done under the same or similar circumstances.

"Negligence," when used with respect to the conduct of Plaintiffs, means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

## ORDINARY CARE

"Ordinary care," when used with respect to the conduct of the patent lawyers at Akin Gump, Branscomb, Hamilton, and Hamilton & Terrile or Conley Rose, one of the firms of the Replacement Lawyers, means that degree of care than an attorney licensed to practice before the PTO would use under the same or similar circumstances.

"Ordinary care," when used with respect to the conduct of lawyers who are not patent lawyers at Akin Gump, Branscomb, Hamilton, and Hamilton & Terrile or the Replacement Lawyers means that degree of care that an attorney of ordinary prudence would use under the same or similar circumstances.

"Ordinary care," when used with respect to the conduct of Plaintiffs, means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

## PROXIMATE CAUSE

"Proximate cause," with respect to a patent lawyer means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that an attorney licensed before the PTO would have foreseen that the injury, or some similar injury, might reasonably result therefrom.

Proximate cause," with respect to lawyers who are not patent lawyers means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that the attorney would have foreseen that the injury, or some similar injury, might reasonably result therefrom.

Proximate cause," with respect to Plaintiffs means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person would have foreseen that the injury, or some similar injury, might reasonably result therefrom. To establish proximate cause, Plaintiffs must show that they would have prevailed in one or more of their claims for patent infringement but for the negligence of Akin Gump.

There may be more than one proximate cause of an event.

## AUTHORITY AND VICARIOUS LIABILITY

You are instructed that a party's conduct includes the conduct of another who acts with the party's authority or apparent authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

Apparent authority exists if a party (1) knowingly permits another to hold himself or itself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

In this case, you are instructed that the Replacement Lawyers were authorized by Plaintiffs to prosecute those lawsuits, were agents of Plaintiffs, and therefore, the acts and omissions of the Replacement Lawyers are the acts and omissions of Plaintiffs.

Knowledge or notice to an attorney that was acquired during the existence of an attorney-client relationship, while the attorney was acting within the scope of his authority, is imputed to the client.

You are instructed that a law firm, such as Branscomb or Akin Gump, is vicariously liable for the negligence of an employee if, at the time of the allegedly negligent act, the employee was acting within the scope of his or her employment.

10

A corporation may act only through natural persons as its officers, agents or employees.  In general, officers, agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation, or within the scope of their duties as officers, agents or employees of the corporation.

## COMPARATIVE RESPONSIBILITY

For each claim for damages made by Plaintiffs, you will be asked to determine the percentage of responsibility for each party found by you to be responsible, if any. "Percentage of responsibility" means the percentage attributed to each responsible party with respect to causing or contributing to cause in any way the harm for which recovery of damages is sought.

The percentages you find must total 100 percent.  The percentages must be expressed in whole numbers.  The responsibility attributable to any one party is not necessarily measured by the number of acts or omissions found.  The percentage attributable to any one party need not be the same percentage attributed to that party in answering another question.

## DIRECT INFRINGEMENT—GENERALLY

Plaintiffs allege that the following companies directly infringed claim 1 of the '234 patent and claims 1-7 of the '771 patent:

(1)   Scott Technologies, Inc.;

(2)   Interspiro, Inc. and Interspiro AB;

(3)   Bacou USA, Inc., Bacou USA Safety, Inc., and Survivair, Inc.;

(4)   Mine Safety Appliances Company and MSA Europe-Auergesellschaft GmbH; and

(5)   International Safety Instruments, Inc.

A patent may be directly infringed in two ways. A claim may be "literally" infringed or it may be infringed under the "doctrine of equivalents." I will now instruct you on the specific rules you must follow to determine whether Plaintiffs have proved that the accused infringers infringed one or more of the claims of any of the patents involved in this case.

## DIRECT INFRINGEMENT—LITERAL INFRINGEMENT

You must decide whether (1) Scott Technologies, Inc.; (2) Interspiro, Inc. and Interspiro AB; (3) Bacou USA, Inc., Bacou USA Safety, Inc., and Survivair, Inc.; (4) Mine Safety Appliances Company and MSA Europe-Auergesellschaft GmbH; and (5) International Safety Instruments, Inc. (hereinafter the "infringing defendants") have made, used, sold, offered for sale, or imported within the United States device(s) and/or performed method(s) covered by claim 1 of the '234 patent or one or more of claims 1-7 of the '771 patent. You must compare each claim, as I have interpreted it in the table below, to the accused infringers' products and methods to determine whether every requirement of the claim can be found in the accused infringers' products and/or methods.

To prove direct infringement, Plaintiffs must prove it is more probable than not that the accused infringers' products or methods include every requirement for one or more claims of Plaintiffs patents. If the accused infringers' products or methods omit any requirement recited in one or more patent claim, the accused infringers' products and methods do not infringe that claim.

Plaintiffs are not required to prove that accused infringers intended to infringe or had actual knowledge of the patent. An alleged infringer may still directly infringe even though it believes in good faith that what it is doing is not an infringement of the patent.

# THE MEANING OF CLAIM TERMS

I have decided the correct construction or meaning of certain words in the patent claims. During your deliberations you should read and apply the following requirements of the asserted patent claims:

**U.S. Patent No. 5,689,234**

| Claim 1 |
|---|
| 1.       A group of interconnected elements working together to accomplish the objectives of keeping track of, as if by electronic device, one or more stated parameters and warning of, by means of a signal, certain conditions of those one or more parameters, for use in conjunction with a firefighter's pressurized breathing system comprising:<br><br>a combination of a pressure transducer, an analog-to-digital converter and a microprocessor, and all equivalent structures for measuring air pressure in said breathing system;<br><br>a combination of a motion detector and microprocessor, and all equivalent structures for measuring the motion (or lack thereof) of a firefighter; and<br><br>a combination of an audible alarm and microprocessor, and all equivalent structures for providing an audible alarm when<br><br>      said air pressure falls below a determined, decided, or established in advance pressure level<br><br>        or<br><br>      failure to detect motion of said firefighter for a determined, decided, or established in advance length of time. |

**U.S. Patent No. 5,910,771**

| Claim 1 |
|---|
| 1.       A group of interconnected elements working together to accomplish the objectives of keeping track of, as if by electronic device, one or more stated parameters and warning of, by means of a |

14

signal, certain conditions of those one or more parameters for breathing apparatus, the system comprising:

a timer for at least first and second periods;

at least one device that measures gas or air pressure and generates a usable output based upon the measured gas or air pressure in the breathing apparatus;

a motion detector;

an alarm responsive to air or gas pressure below a level that is determined, decided, or established in advance; and

at least first and second alarms responsive to lack of motion detected during corresponding time periods respectively.

| Claim 2 |
|---|
| 2.      The monitoring and alarm system of claim 1 wherein said the motion detector is automatically turned on when the air or gas pressure exceeds a previously determined or established level. |

| Claim 3 |
|---|
| 3.      The monitoring and alarm system of claim 1 or 2 wherein each of said alarms responsive to motion may be audibly distinguished. |

| Claim 4 |
|---|
| 4.      A method of activating a motion detector in a group of interconnected elements working together to accomplish the objectives of keeping track of, as if by electronic device, one or more stated parameters and warning of, by means of a signal, certain conditions of those one or more parameters, for breathing apparatus, the method comprising:<br><br>generating a usable output from measured gas or air pressure in the breathing apparatus; and<br><br>the motion detector is automatically turned on when the air or gas pressure exceeds a previously determined or established level. |

| Claim 5 |
|---|
| 5.      A group of interconnected elements working together to accomplish the objectives of keeping track of, as if by electronic device, one or more stated parameters and warning of, by means of a signal, certain conditions of those one or more parameters for |

breathing apparatus, the system comprising:

at least one device that measures gas or air pressure and generates a usable output based upon the measured gas or air pressure in the breathing apparatus;

a motion detector that is automatically turned on when the air or gas pressure exceeds a previously determined or established level; and

at least one alarm responsive to lack of motion detected.

| Claim 6 |
| --- |
| 6.     The monitoring and alarm system of claim 5 wherein said at least one alarm may be activated by a manual switch. |

| Claim 7 |
| --- |
| 7.     A motion detector in a group of interconnected elements working together to accomplish the objectives of keeping track of, as if by electronic device, one or more stated parameters and warning of, by means of a signal, certain conditions of those one or more parameters in a used with pressurized air for breathing, wherein the motion detector is automatically turned on when the air or gas pressure exceeds a previously determined or established level. |

16

## OPEN-ENDED OR "COMPRISING" CLAIMS

The beginning, or preamble, to the claims of the '234 and '771 patents use the word "comprising." "Comprising" means "including" or "containing but not limited to." That is, if you find that on accused infringer's product or method includes all the requirements in a patent claim, the claim is infringed. That the accused products or methods might include additional components or steps does not avoid infringement.

For example, a claim to a table *comprising* a tabletop, legs, and glue would be infringed by a table that includes those requirements, even if the table also includes additional requirements such as wheels on the table's legs.

# INVALIDITY

## VALIDITY—GENERALLY

Patent invalidity is a defense to patent infringement. Even though the PTO examiner has allowed the claims of a patent, you and I have the ultimate responsibility for deciding whether the claims of the patents are valid.

I will now instruct you on the invalidity issues you should consider. As you consider these issues, remember that Akin Gump bears the burden of proving that the patents are invalid by clear and convincing evidence.

## ANTICIPATION – PUBLICLY USED OR KNOWN, OR PREVIOUSLY PUBLISHED

Akin Gump contends that Platiniffs' patents (the '378 patent, the '234 patent, and the '771 patent) are invalid because the claimed invention(s) is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference. Akin Gump must prove by clear and convincing evidence that the claim was anticipated.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of SCUBA diving and SCBA fire safety looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Akin Gump can show that a patent claim was not new:

– if the claimed invention was already publicly known or publicly used by others in the United States before March of 1990;

– if the claimed invention was already patented or described in a printed publication anywhere in the world before March of 1990.

19

### ANTICIPATION—MADE OR INVENTED BY SOMEONE ELSE

In this case Akin Gump argues that the claims of the Plaintiffs' patents are invalid as anticipated because it was made or invented by someone else. If someone other than L. Herbert Stumberg and James Fulton made or invented the invention described in the patent claims involved in this lawsuit, then Plaintiffs' claims were "anticipated" by the other invention, and those claims are invalid.  Akin Gump contends this patent is not new and must prove by clear and convincing evidence that the claim was anticipated.

Here is a list of the ways that Akin Gump can show that a patent claim was not new because the invention described by those claims was first made or invented by someone else if the claimed invention was already made by someone else in the United States before March of 1990, if that other person had not abandoned the invention or kept it secret.

## STATUTORY BARS

Akin Gump may prove invalidity of the patent by clear and convincing evidence that the patent applicant failed to meet one of several statutory provisions in the patent laws. These provisions are called "statutory bars." For a patent claim to be invalid by a statutory bar, all its requirements must have been present in one prior art reference dated more than one year before the patent application was filed.

Here is a list of ways Akin Gump can show that the patent application was not timely filed, that is, within one year of the occurrence of these events:

- if the claimed invention was already patented or described in a printed publication anywhere in the world before August 6, 1990. A reference is a "printed publication" if it is reasonably accessible to those interested in the field, even if it is difficult to find.;

- if the claimed invention was already being publicly or commercially used in the United States before August 6, 1990 and that use was not primarily an experimental use controlled by the inventor to test whether the invention worked for its intended purpose;

- if a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before August 6, 1990.

For a claim to be invalid because of a statutory bar, all the claimed requirements must have been either (1) disclosed in a single prior art reference or (2) implicitly disclosed in a reference to one of ordinary skill in the field of the invention. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied to enable someone of ordinary skill in the field of the invention looking at the reference to make and use the claimed invention.

## OBVIOUSNESS

In this case, Akin Gump contends that the claims of the '234 and '771 patents are invalid as obvious. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention as of August 6, 1991. This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all this prior art would have come up with the claimed invention.

But a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions, it is important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention. Teachings, suggestions, and motivations may be found in written references including the prior art itself. However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. Additionally, teachings,

22

suggestions, and motivations may be found in the nature of the problem solved by the claimed invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1.  Whether Akin Gump has identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2.  Whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.

3.  Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.  You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2.  You must decide the scope and content of the prior art. In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention. Pertinent, or analogous,

prior art is defined by the nature of the problem solved by the claimed invention. It includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned. Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

3. You must decide what difference, if any, existed between the claimed invention and the prior art.

Where these matters are in dispute, the party asserting invalidity of the patent has the burden to establish by clear and convincing evidence that its version of these facts is correct. Finally, you should consider any of the following factors that you find have been shown by the evidence:

A. Factors tending to show nonobviousness:

1. commercial success of a product due to the merits of the claimed invention;

2. a long-felt, but unsolved, need for the solution provided by the claimed invention;

3. unsuccessful attempts by others to find the solution provided by the claimed invention;

4. copying of the claimed invention by others;

5. unexpected and superior results from the claimed invention;

6. acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention; and

7. disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious.

B. Factors tending to show obviousness include independent invention of the claimed invention by others before or at about the same time as the named inventor

24

thought of it.

You may consider the presence of any of the list factors 1-7 as appropriate as an indication that the claimed invention would not have been obvious at the time the claimed invention was made. And you may consider the presence of independent inventions as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

## SCOPE AND CONTENT OF PRIOR ART

North-South and AMT and Akin Gump disagree on whether prior inventions and prior patents should be included in the prior art you use to decide the validity of the claims of Plaintiffs' patents. To qualify as prior art relevant to Plaintiffs' patents, these references must be reasonably related reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem. Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

## DIFFERENCES OVER THE PRIOR ART

In reaching your conclusion about whether or not the claims in Plaintiffs' patents would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the identify prior art reference(s) and the claimed requirements.

## LEVEL OF ORDINARY SKILL

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention. You should consider all the evidence introduced at trial in making this decision, including:

1. the levels of education and experience of persons working in the field;

2. the types of problems encountered in the field; and

3. the sophistication of the technology.

Plaintiffs contend that the level of ordinary skill in the field of the invention was that of either the average engineer/design specialist working in the field of SCBA design, development and manufacture or of the average engineer/design specialist working in the area of PASS design, development and manufacture but not simultaneously. Akin Gump contends that the level of ordinary skill in the field was a Bachelor of Science in Mechanical Engineering or the equivalent with some experience in systems.

## INEQUITABLE CONDUCT – GENERALLY

In the underlying infringement cases the infringing defendants contended that Plaintiffs may not enforce the '378, '234 and/or '771 patents against them because Plaintiffs and/or their attorneys engaged in inequitable conduct before the Patent and Trademark Office during prosecution of these patents.

Applicants for a patent have a duty to prosecute patent applications in the Patent and Trademark Office with candor, good faith, and honesty. This duty of candor and good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application. An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct." Upon a finding of inequitable conduct, the inequitable conduct associated with a parent patent can "infect" related applications and patents.

In this case, Plaintiffs assert that Akin Gump committed inequitable conduct by failing to disclose known prior art references during the prosecution of the '234 and '771 Patents. Plaintiffs further assert that the inequitable conduct regarding the '234 Patent necessarily infects the '771 Patent.

In this case, Akin Gump asserts that Plaintiffs and/or parties other than Akin Gump committed inequitable during the prosecution of the '378 Patent and that this inequitable conduct necessarily infects the '234 and '771 Patents.

The party asserting inequitable conduct must prove inequitable conduct by clear and convincing evidence. To determine whether the '378, '234, and/or '771 patents were obtained through inequitable conduct, you must determine whether a person having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

**MATERIALITY**

Plaintiffs contend that the prior art references were known to Akin Gump which was withheld from the Patent and Trademark Office during the prosecution of the '234 and/or '771 patents. If you find that Akin Gump withheld information when applying for the '234 and/or '771 patents, you must determine whether that information was material information.

Akin Gump contends that the prior art references were known to Plaintiffs and its representatives other than Akin Gump and that Plaintiffs and its representatives other than Akin Gump withheld such references from the Patent and Trademark Office during the prosecution of the '378 patent. If you find that Plaintiffs and its representatives other than Akin Gump withheld information when applying for the '378 patent, you must determine whether that information was material information.

Information is material if it establishes when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. Information is also material if it refutes or is inconsistent with the information provided to the Patent and Trademark Office or arguments made by the applicant to persuade the Patent and Trademark Office that the invention is entitled to patent protection. Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

## INTENT TO DECEIVE OR MISLEAD

If you determine that material information was withheld from the Patent and Trademark Office, you must next determine whether this was done with an intent to deceive or mislead the Patent and Trademark Office. Intent to deceive the Patent and Trademark Office may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances.

Simple negligence, or gross negligence alone, on the part of the accused patent applicant, patent attorney, or patent agent involved in the preparing and prosecution of the application is insufficient for a holding of inequitable conduct.

In determining whether or not there was intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

## BALANCING OF MATERIALITY AND INTENT

If Plaintiffs have proven by clear and convincing evidence that information was withheld by Akin Gump; and/or if Akin Gump has proven by clear and convincing evidence that information was withheld by Plaintiffs and its representatives other than Akin Gump, you must then balance the degree of materiality and the degree of intent to deceive or mislead the Patent and Trademark Office to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the Plaintiffs' Patents. Where the materiality of the withheld information is high, the showing of intent needed to establish inequitable conduct is proportionally less. Likewise, when the showing of intent is high, the showing of materiality may be proportionally less.

## DAMAGES: GENERALLY

I will now instruct you on damages. The amount of damages must be adequate to compensate Plaintiffs for the infringement, but it may not be less than a "reasonable royalty." At the same time, your damages determination must not include additional sums to punish Akin Gump or set an example. You may award compensatory damages only for the loss that Plaintiffs prove was caused by Akin Gump.

I will now instruct you on how to calculate damages. By instructing you on damages, I do not suggest that one or the other party should prevail. These instructions are provided to guide you on the law in the event you find infringement of a valid patent claim and thus must address the damages issue.

## DAMAGES—BURDEN OF PROOF

Where the parties dispute a matter concerning damages, it is Plaintiffs burden to prove it is more probable than not that Plaintiffs version is correct. Plaintiffs must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, Plaintiffs are not entitled to damages that are remote or speculative. When the amount of damages cannot be ascertained with precision, any doubts regarding the amount should be resolved against the Akin Gump.

## DAMAGES—WHEN DAMAGES BEGIN

In this case, if you find that the '234 or '771 patents were granted before the infringing activity began, you should calculate damages from the date you determine that the infringement began.  If you find that the '234 and '771 patents were granted after the infringing activity began, damages should be calculated from date the respective patent issued.

## REASONABLE ROYALTY - DEFINITION

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer, taking place at the time when the infringing sales first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred. A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.

In addition to determining the proper royalty rate, you must also determine the proper royalty base. You may determine the royalty base to be either (1) the value attributable to the PASS device alone, whether sold separately or as part of an integrated system; or (2) the value of the PASS device when sold separately plus the value of the SCBA system when sold with an integrated PASS (the "entire market value rule").

The entire market value rule permits recovery of a reasonable royalty based upon the value of the entire apparatus containing several features, where the patent related feature is the basis for customer demand. This measure of damages arises when both the patented and unpatented components together are analogous to components of a single

assembly, parts of a complete machine, or constitute a functional unit but not where the unpatented components have essentially no functional relationship to the patented invention and may have been sold with an infringing device only as a matter of convenience or business advantage.  You are instructed that in order for you to award damages under the entire market value rule, Plaintiffs must have proven, by a preponderance of the evidence, that the patented feature was the basis of customer demand for the SCBA units as a whole or the substantial value of the product sold.

In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts including the following to the extent they are helpful to you:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

## DUTY TO DELIBERATE

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges–judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## INSTRUCTIONS ON DELIBERATION

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the court has admitted into evidence. Select your foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the court has given you about your conduct during the trial.

After you have reached your unanimous verdict, your foreperson must fill in your answers to the written questions on the verdict form and sign and date the verdict form.

Do not reveal your answers until such time as you are discharged, unless

otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AIR MEASUREMENT TECHNOLOGIES, INC.,<br>NORTH-SOUTH CORPORATION,<br>AND LOUIS HERBERT STUMBERG, JR.<br><br>    *Plaintiffs,*<br><br>V.<br><br>AKIN GUMP STRAUSS HAUER &<br>FELD, L.L.P.<br><br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. SA-03-CA-0541-RF |

**VERDICT FORM**

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence unless you are otherwise instructed. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." The term "preponderance of the evidence" means the greater weight of credible evidence admitted in this case. A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proven by a preponderance of the evidence, you must find that the fact is more likely true than not true. Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless you are otherwise instructed.

## QUESTION 1

### (ANTICIPATION- PUBLICLY USED OR KNOWN )

Has Akin Gump proven by clear and convincing evidence that all of the claims in Plaintiffs' patents listed below are invalid because they were publicly used or known by others before March of 1990 ?

Answer "yes" or "no" for each patent listed below.

'378 patent          _____

'234 patent          _____

'771 patent          _____

## QUESTION 2

### (ANTICIPATION—ON SALE BAR)

Has Akin Gump proven by clear and convincing evidence that all of the claims in Plaintiffs' patents listed below are invalid because of the on-sale bar?

Answer "yes" or "no" for each patent listed below.

'378 patent          _____

'234 patent          _____

'771 patent          _____

**QUESTION 3**

(ANTICIPATION—PUBLIC USE)

Has Akin Gump proven by clear and convincing evidence that all of the claims in Plaintiffs' patents listed below are invalid because of public use?

Answer "yes" or "no" for each patent listed below.

'378 patent       _____

'234 patent       _____

'771 patent       _____


**QUESTION 4**

(ANTICIPATION—MADE OR INVENTED BY SOMEONE ELSE)

Has Akin Gump proven by clear and convincing evidence that the invention claimed in the patents below was made by someone else before March of 1990?

Answer "yes" or "no" for each patent listed below.

'378 patent       _____

'234 patent       _____

'771 patent       _____

## QUESTION 5

### (OBVIOUSNESS)

Has Akin Gump proven by clear and convincing evidence that all of the claims in Plaintiffs' patents listed below are invalid as obvious?

Answer "yes" or "no" for each patent listed below.

'378 patent          _____

'234 patent          _____

'771 patent          _____

## **QUESTION 6**

### (INEQUITABLE CONDUCT)

Has Akin Gump proven by clear and convincing evidence that any of those listed below failed to disclose to the PTO information that was material to the '378, '234, or '771 patents at issue, coupled with an intent to deceive or mislead?

Answer "yes" or "no" for each of those listed.

a.     Branscomb                                        _____

b.     Hamilton (during the time between 1991 and 1995)

                                                                         _____

c.     Plaintiffs                                            _____

46

If you have answered "No" to all of the questions above, then answer the following questions. Otherwise, do not answer the following questions.

## QUESTION 7

Did the negligence, if any, of those named below proximately cause the injury in question?

"Injury in Question," means Plaintiffs' loss of reasonable royalties for the use of their patented invention.

Answer "Yes" or "No" to each of the following:

Akin Gump                    _____

Branscomb                    _____

Hamilton & Terrile           _____

Gary Hamilton*               _____

*(during the time between January 1, 1991 and April 30, 1995)

Plaintiffs                   _____

If you answered "Yes" to Question 7 for more than one of those named above, then answer the following question. Otherwise, do not answer the following question and go to Question 9.

## QUESTION 8

Assign percentages of responsibility only to those you found caused or contributed to cause the injury. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found.

For each person you found caused or contributed to cause the injury, find the percentage of responsibility attributable to each:

| | | | |
|---|---|---|---|
| a. | Akin Gump | _____ | % |
| b. | Branscomb | _____ | % |
| c. | Hamilton & Terrille | _____ | % |
| d. | Gary Hamilton* | _____ | % |

*(during the time between January 1, 1991 and April 30, 1995)

| | | | |
|---|---|---|---|
| e. | Plaintiffs | _____ | % |
| | Total | 100 | % |

**QUESTION 9**

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their loss, if any, resulting from the negligence for which you have answered "Yes" in Question No. 1?

Do not increase or reduce the amount in your answer to this question because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not include interest on any amount of damages, if any. Do not reduce your award of damages for any amount of money actually paid in settlement of Plaintiffs' litigation with the SCBA manufacturers or previous Defendants in this case. This question inquires only into the amount of money in gross, exclusive of interest, that Plaintiffs would have been awarded against the SCBA manufacturers had Plaintiffs prevailed in the infringement litigation.

Answer in dollars and cents, for damages, if any.

Answer:        $_____

## **QUESTION 10**

From a preponderance of the evidence, do you find that Plaintiffs knew or should have known of the facts that establish their claim for malpractice against Akin Gump prior to May 28, 2001?

Answer "yes" or "no":        _____